Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff, Jocelyn Arellano,
as Guardian ad Litem for J.S., a minor

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN ARELLANO, as Guardian ad Litem for J.S., a minor,<br><br>       Plaintiff,<br><br>       v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY SHERIFF ALEX VILLANUEVA, in his official capacity, LOS ANGELES COUNTY SHERIFF'S LIEUTENANT JIM CERDA, in his individual and official capacity, LOS ANGELES COUNTY SHERIFF'S SERGEANT MARKEE WILSON, in her individual and official capacity, LOS ANGELES COUNTY SHERIFF'S DEPUTY RUEL-JAY QUIBLAT, in his individual and official capacity, LOS ANGELES COUNTY SHERIFF'S CUSTODY ASSISTANT OMAR CONTRERAS, in his individual and official capacity and DOES 1 TO 15,<br><br>       Defendants. | Case No. 2:21-cv-5378<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

1

**JURISDICTION AND VENUE**

1.      This case arises under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States Constitution, and various state-law governmental tort statutes. Jurisdiction in this Honorable Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in Central District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in the County of Los Angeles, California. This is an action for damages and such other and further relief as may be consistent with law pursuant to 42 U.S.C. § 1983, to redress violations of the decedent's rights protected by the United States Constitution, by persons acting under color of law. This is also a survivor's action and one for wrongful death brought pursuant to the Constitution, statutes and/or common law of the State of California.

**PARTIES**

3.      Plaintiff J.S. is the daughter of Nicholas Sanchez, deceased ("the decedent") and is a resident of Los Angeles County, State of California. Decedent died intestate. J.S. is decedent's beneficiary and successor-in-interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in any action or proceeding on decedent's behalf. J.S. is a minor and her mother, Jocelyn Arellano, is her Guardian ad Litem for purposes of this lawsuit, a copy of the application of which is attached to this Complaint as Exhibit A. Plaintiff J.S., through her Guardian ad Litem Jocelyn Arellano and pursuant to the Declaration, which is attached to this Complaint as Exhibit B,  sues as successor-in-interest, heir and legal representative of decedent to seek redress for the deprivation of decedent's rights to seek relief as a result of the unlawful and wrongful death of Nicholas Sanchez. This action is filed pursuant to CCP §§ 337.60, 377.30, et al and a declaration is filed under CCP 377.32. Decedent's death certificate is attached herein as Exhibit C.

4.      Plaintiff J.S. is the daughter of Nicholas Sanchez, and lives with her mother Jocelyn Arellano in Los Angeles County, State of California. At all times material to this complaint, plaintiff was a private citizen of the State of California. Plaintiff J.S. brings claims on behalf of herself and decedent.

5.      Defendant County of Los Angeles ("County") is a governmental entity organized and existing under the laws of the State of California. Defendant County of Los Angeles Sheriff's Department ("LASD") is a public agency subject to suit. In this case, the County and LASD acted through its agents, employees, and servants, including their policymakers and through Defendant Sheriff Alex Villanueva ("Villanueva"), the Sheriff of the LASD, who is sued herein in his individual and official capacity.

6.      At all relevant times, Defendants County, LASD, Villanueva, and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the LASD, including those individuals charged with protecting the health and safety of detainees and arrestees at County detention facilities, including decedent Nicholas Sanchez, and to assure that said actions, policies, rules, regulations, customs, practices and procedures of the LASD and its employees and agents comply with the laws and constitutions of the United States and the State of California.

7.      Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Villanueva, LASD Lieutenant Jim Cerda (Employee # 483156), LASD Sergeant Markee Wilson (Employee # 550855), Deputy Ruel-Jay Quiblat (Employee # 639790, Custody Assistant Omar Contreras (Employee # 645026), Deputy Samuel Hernandez (Employee # 636454) and Does 1 through 15, inclusive, were residents within the County of Los Angeles, State of California. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Villanueva, Cerda, Wilson, Quiblat, Hernandez, Contreras, (also referred to

as "Individual Defendants") and Does 1 through 15, inclusive, were employees, agents and/or servants of the County, and acted within the course and scope of said employment, agency and/or service, and possessed the power and authority and were charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of the County detention facilities, including Men's Central Jail, and concerning the means by which the life and safety of arrestees and detainees were to be secured, and what methods of ensuring timely, adequate and responsive safety checks and medical attention to detainees placed within jail cells.

8.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 15, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed, believes and alleges that each of the fictitiously named defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

9.     The individual defendants were at all times mentioned herein duly appointed, qualified and acting officers of the LASD, acting within the course and scope of such employment with the County, with complete authority and ratification of the principal, the County, and acted under color of the statutes, ordinances, regulations, policies, customs and usages of the State of California and of the County of Los Angeles. Each individual defendant is sued in both his/her individual and official capacities.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Pursuant to Government Code § 910, defendant County of Los Angeles was presented a timely appropriate claim for damages on or around June 19, 2019, less than six months after the incident.

4

# FACTS

**A.    General Allegations re Policy and Practice**

11.    Defendants County and LASD, with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights of plaintiff, plaintiff's father Nicholas Sanchez, and all persons similarly situated (namely, inmates at jails operated by the LASD) maintained, enforced, tolerated, permitted, acquiesced in, and applied polices or practices of, among other things:

a.    Selecting, retaining, and assigning deputies, civilian personnel and civilian volunteers to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates;

b.     Failing to adequately adopt and maintain security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following failures: failure to use security cameras to monitor the safety of detainees within jail cells; failure to install, maintain, use, and regular monitor the audio monitoring equipment of inmate- or sound-actuated audio monitoring system, which is capable of alerting personnel who can then respond immediately to an emergency; failure to train sergeants, deputies, civilian personnel and civilian volunteers to monitor detainees and inmates and immediately respond to medical emergency, or any other predictable scenario where the physical safety of an inmate would be jeopardized; failure to monitor intoxicated detainees who are unable to care for themselves; failure to conduct proper safety checks; failure to conduct proper contraband checks; failure to recognize potentially dangerous situations and circumstances that are likely to jeopardize the safety and health of detainees after being put on notice of the risk to a detainee.

c.    Failing to adequately train, supervise, and control deputies, civilian

employees or volunteers proper law enforcement practices, including operating a jail facility;

        d.     Failing to adequately discipline deputies or civilian employees involved in misconduct;

        e.     Failing to respond to notice of contraband and failure to conduct adequate safety checks;

12.     Plaintiff is informed and believes, and on the basis of such information and belief alleges, that defendants County and LASD ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard for the safety, security, and constitutional and statutory rights of Nicholas Sanchez and Plaintiffs.

**B.    The Incident**

13.     In the latter-part of 2018, Nicholas Sanchez was 19 years old, a recent high school graduate and employed as a Parks and Recreation aid, when he found himself incarcerated as a pre-trial detainee in the Los Angeles County Men's Central Jail (MCJ).

14.     While at MCJ, Mr. Sanchez became aware of rumors by jail inmates that he was cooperating with law enforcement against members of a gang he was alleged to be a member. As a result of these rumors, Mr. Sanchez had to worry about other inmates threatening his physical safety.

15.     LASD staff at the MCJ made matters worse. In or around November 2018, Mr. Sanchez was harassed by a Deputy Medina who threatened to prevent Mr. Sanchez from accessing meals and threatened to move Mr. Sanchez to a cell with a LA street gang members known to be rivals with the gang Mr. Sanchez had been alleged to

either be a member of or be cooperating against. Mr. Sanchez told his mother, Yolanda Sanchez, and on November 28, 2018, Ms. Sanchez filed a grievance related to her son being harassed by LASD staff. Ms. Sanchez was given a receipt of this complaint as (Ref # 5100-2018-1130-281). In making that complaint, Ms. Sanchez recalls speaking to a sergeant who was working at the MCJ as a Watch Commander.

16.     Mr. Sanchez was not safe in his cell, which Ms. Sanchez believes was in the 4400 unit. In December 2018, Mr. Sanchez heard repeated rumors pertaining to the leader of the gang (hereinafter referred to as "Member 1") that prosecutors had alleged Mr. Sanchez was a member. In particular, Mr. Sanchez repeatedly heard rumors that Member 1 wanted him dead.

17.     On December 31, 2018, Mr. Sanchez called his mother to report that individual defendants and Does 3 through 10 had permitted the inmates in 4700 to drink "pruno" (a form of alcohol made in jail) and get drunk for New Year's Eve. Inmate calls from the MCJ are recorded and monitored, but defendants did not act on this piece of information.

18.     In the late hours of January 1, 2019, Mr. Sanchez called his mother to report that his cellmate was throwing up and apparently overdosing on "two mollies" (a type of high-powered ecstasy often mixed with other chemicals). That same evening, the cellmate was eventually taken from the cell and taken to a hospital, received medical treatment and survived the overdose.

19.     Defendants Deputy Quiblat and Custody Assistant Contreras knew that Mr. Sanchez's cellmate smelled like alcohol, was under the influence of contraband, and was in need of emergency medical help because they helped transport the cellmate to receive medical attention, were on close proximity to the cellmate and could smell his breath. Defendant Sergeant Wilson was responsible for the 4000 floor, which included 4700 unit, and was also on notice that Mr. Sanchez's cellmate had received emergency medical treatment related to contraband and that Mr. Sanchez was left alone in the cell. Defendant Cerda knew that Sanchez's cellmate smelled like alcohol, was under the

influence of contraband and was in need of emergency medical help because as the Watch Commander he signed off on the "Inmate Injury/Illness Report," which detailed that the cellmate's breath smelled like alcohol and/or an unknown medication and had to be transported to an outside hospital to receive emergency medical care. Despite this knowledge, Watch Commander Cerda and Sergeant Wilson did not order a search of Mr. Sanchez's cell and took no steps to ensure proper safety checks during the early morning hours of January 2, 2019.

20.    Defendants did not search the cell for contraband, did not monitor Mr. Sanchez and did not move Mr. Sanchez out of the cell despite being put on notice that Mr. Sanchez was in danger, having been put on notice that his cellmate had ingested contraband and had overdosed. Nor did Defendants monitor Mr. Sanchez's cell, which should have been equipped with technology that would allow for the visual and audio monitoring of Mr. Sanchez's wellbeing. Instead, Mr. Sanchez remained in 4700 and defendants failed to monitor his cell, failed to provide timely medical attention, and failed to intervene to protect Mr. Sanchez.

21.    The cell Mr. Sanchez remained in was either not capable of audio monitoring, or no LASD staff at MCJ bothered to monitor it, despite state regulation, including California Building Code Title 24, Section 1231.2.22, which requires audio monitoring capable of alerting personnel who could respond immediately.[1] Additionally, Defendants did not bother to take the necessary visual checks, video surveillance checks, medical checks and other forms of monitoring required by regulation and protocol. This systematic failure by the entity defendants was compounded by the fact that multiple reports put the County and LASD on notice of repeated inmate deaths at MCJ and that the safety checks designed to protect inmates were not being conducted in an adequate manner. For instance, in October 2017, the Office of the Inspector General (OIG) for the County of Los Angeles issued a report

---

[1] *See* Section 1231.2.22, *available at* http://www.bscc.ca.gov/wp-content/uploads/Adult-Title-24-SOUL-2018.pdf

8

1   entitled "Reform and Oversight Efforts: Los Angeles County Sheriff's Department,

2   October 2017," that described four in-custody deaths in a three-month period and

3   stated, "[t]hese deaths continue to raise concerns regarding…the quality of safety

4   checks."[2] Similarly, a December 2018 OIG report reiterated concerns with "ongoing

5   sub-standard safety checks and insufficient attention to prisoner welfare, repeated

6   negative outcomes in the medical and mental health care of prisoners, and a variety of

7   other problems," and gave additional notice to LASD and the County: "The Office of

8   Inspector General is nonetheless concerned about the quality of medical and mental

9   health care provided, poor coordination and communication between Correctional

10  Health Services and Custody Services personnel, sufficiency of the safety checks and

11  the timeliness and quality of life saving efforts."[3]

12          22.     After the hospitalization of Mr. Sanchez's cellmate related to ingestion of

13  contraband, for hours, and over two different shifts, Deputy Ruel-Jay Quiblat and

14  Custody Assistant Omar Contreras,  (the LASD employees responsible for conducting

15  safety checks in 4700 during the "EM shift"), and Deputy Samuel Hernandez (the

16  LASD deputy responsible for conducting safety checks in 4700 during the "EM shift"),

17  did not properly conduct inmate safety checks and did not properly monitor Mr.

18  Sanchez's cell, leaving him alone and without adequate medical attention, despite being

19  put on notice that Mr. Sanchez's cellmate had already overdosed and that Mr. Sanchez

20  was vulnerable and should be moved. As deputies assigned with the task of being

21  "Safety Officers," Deputies Quiblat, Contreras and Hernandez were required to

22  conduct safety checks approximately every thirty minutes, and in doing so were

23  required to look at the inmates for signs of life (e.g. breathing) and obvious signs of

---

25  [2] *Available at:*

26  https://oig.lacounty.gov/Portals/OIG/Reports/October_%202017%20Reform%20a
    nd%20Oversight%20Efforts.pdf?ver=2017-11-01-174904-433

27  [3] *Available at*:

28  https://oig.lacounty.gov/Portals/OIG/Reports/December%202018%20Reform%20a
    nd%20Oversight%20Efforts.pdf?ver=2019-02-05-161050-613

distress (e.g. difficulty breathing). Had Deputies Quiblat, Contreras and Hernandez conducted proper inmate safety checks of Mr. Sanchez's cell, they would have discovered that Mr. Sanchez was in obvious distress and hours would not have passed, and Mr. Sanchez would not have been left alone, only to be found unconscious at 8:30 a.m. by a nurse sent to administer prescribed pills to Mr. Sanchez.

23.     On January 2, 2019, around 8:30 a.m., hours after being put on notice, Mr. Sanchez was found in his cell (the same cell that his cell-mate had left to go to the hospital around 8 hours prior), not by a LASD deputy during a safety check, but during when a nurse arrived to provide pills to Mr. Sanchez. At this point, Mr. Sanchez was found in the top bunk, laying unconscious, foaming at the mouth. The nurse who found Mr. Sanchez's body reported that the entire row in Module 4700 smelled strongly of alcohol. Around 9:00 a.m. Mr. Sanchez was pronounced dead. A contraband search of the row in Module 4700 later that day resulted in officials finding intoxicating contraband substances in the searched cells, including heroin and methamphetamine. The autopsy report determined that Mr. Sanchez died of an overdose of heroin and methamphetamine.

24.     Had defendants properly monitored Mr. Sanchez's cell, had defendants conducted proper safety checks of Mr. Sanchez's cell, had defendants searched Mr. Sanchez's cell and properly monitored him, and had defendants provided Mr. Sanchez with medical attention (as had been provided to his cellmate), hours would not have passed with Mr. Sanchez languishing in his cell, unconscious and foaming at the mouth. In the early hours on January 2, 2019, Mr. Sanchez was aware his cellmate was overdosing and was able to call his mother by phone and describe the problem. That he would somehow choose to willfully take drugs from inmates he was scared of, *after* witnessing his cellmate overdose, is simply not realistic. Since defendants were not monitoring 4700 generally and Mr. Sanchez's cell specifically, defendants were not aware that Mr. Sanchez was in medical peril. Despite an overdose in the same cell less than 24 hours prior, Defendants' response to Mr. Sanchez's medical emergency was

even slower, and the failure to receive timely medical attention contributed to Mr. Sanchez's death. Thus, *inter alia*, defendants made the following intentional decisions that put Mr. Sanchez in substantial risk of suffering serious harm: they placed Mr. Sanchez in the 4700 unit that housed gang-affiliated inmates hostile to Mr. Sanchez; they placed Mr. Sanchez in the 4700 unit after receiving complaints that Mr. Sanchez's safety was in jeopardy by other inmates in 4700; they did not monitor or conduct a contraband check of Mr. Sanchez's cell during and after the overdose of his cell-mate on January 1, 2019; they did not conduct proper inmate safety checks of Mr. Sanchez's cell; they did not move Mr. Sanchez or call him out of his cell on January 1, 2019, even after being put on notice that this cellmate had overdosed that same day; they failed to install and/or maintain in the cell that Mr. Sanchez had been placed in 4700 adequate audio monitoring equipment capable of alerting personnel who could respond immediately; they failed to staff and adequately respond to audio monitoring equipment capable of alerting personnel who could respond immediately in the cell that Mr. Sanchez had been placed in 4700.

**DAMAGES**

25.     As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

26.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered the denial of their fundamental constitutional rights guaranteed by the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution, which have caused Plaintiffs to sustain damages in a sum to be determined at trial. As a further

direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff incurred and/or will continue to incur medical expenses, including psychological treatment.

27.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered past and future losses of income that have caused them to sustain economic damages in a sum to be determined at trial.

28.    LASD Lieutenant Jim Cerda, LASD Lieutenant Ramon Lascano, LASD Sergeant Markee Wilson, Deputy Ruel-Jay Quiblat, Deputy Samuel Hernandez, Custody Assistant Contreras and individual Doe defendants, excluding Defendants County and LASD, acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive the decedent of his constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter.

**FIRST CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

**(Against Lieutenant Cerda, Sergeant Wilson, Deputy Quiblat, Deputy Hernandez, Custody Assistant Omar Contreras, and Does 1-15)**

29.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

30.    The individual and Doe defendants, while acting under color of law, deprived Nicholas Sanchez of his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution when they subjected him to cruel and unusual punishment and acted with deliberate indifference and reckless disregard toward Mr. Sanchez's right to be free from unreasonable seizures, and afforded due process of law and by, among other things, the following acts:

        a.      Placing Nicholas Sanchez, a vulnerable detainee, in a cell-block with gang members that defendants knew were hostile to Mr. Sanchez, under circumstances that were conducive to putting Mr. Sanchez at substantial risk;

        b.      Causing Nicholas Sanchez to remain in a dangerous cell-block after his cell-mate had overdosed on drugs when defendants knew, or should have known, that the inmates in 4700 had access to drugs, and that Nicholas Sanchez was particularly vulnerable because he was alone in his cell and there was no other monitoring system other than safety checks, and yet despite this did not conduct a contraband search or ensure proper safety checks ;

        c.      Not watching, monitoring, conducting a proper safety check or protecting Nicholas Sanchez, or otherwise standing by and allowing a second overdose to occur within a 24-hour period in the same cell, after Decedent's cellmate had overdosed, and after Nicholas Sanchez appeared to be yelling for help and appeared to be passed out on the floor of his cell;

        d.      Not providing timely medical attention to Nicholas Sanchez on January 2, 2019, and/or denying Nicholas Sanchez medical care on January 2, 2019.

31.    Plaintiff is informed and believed that individual and Doe defendants were aware of how dangerous it was for Nicholas Sanchez to be placed in 4700. Individual and Doe defendants intentionally, recklessly, and with deliberate indifference, failed to take any security measures to protect a vulnerable pre-trial detainee and failed to conduct a contraband search and ensure proper safety checks.

32.    The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among other various alternatives.

33.     As a direct result of defendants' acts and omissions onto the decedent, Plaintiff has suffered the loss of love, care, comfort, society, companionship, assistance, protection, affection, moral support, and support of decedent. As a direct result of defendants' acts and omission onto the decedent, he experienced severe pain and suffering and the loss of life for which Plaintiffs are entitled to recover damages. Plaintiff J.S., through her Guardian ad Litem Jocelyn Arellano, brings this claim both as a successor-in-interest to decedent, and individually under the Fourteenth Amendment, in that defendants denied this constitutional right without due process of law, and Defendants deprived Plaintiff of her right to a familial relationship in such a manner as to shock the conscience. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seeks attorney's fees.

## SECOND CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. § 1983

### Failure to Intervene to Protect Pre-Trial Detainee in Custody

### (Against Lieutenant Cerda, Sergeant Wilson, Deputy Quiblat, Deputy Hernandez, Custody Assistant Omar Contreras, and Does 1-15)

34.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

35.     The individual and Doe defendants, while acting under color of law, deprived Nicholas Sanchez, Plaintiff's father, of his civil rights under the Fourteenth Amendments to the United States Constitution. At all times relevant here, the individual defendants and Doe defendants 1 through 15 were present and were charged with the Fourteenth Amendment constitutional duties of protection of Nicholas Sanchez and were charged with the duty to not knowingly, with wanton disregard, cause his life, health and safety to be placed in danger by intentionally and/or deliberately ignoring the known dangers to Nicholas Sanchez while in LASD custody at

14

MCJ that their actions and/or omissions placed him in.

36.     The individual and Doe defendants, while acting under color of law, deprived Nicholas Sanchez, Plaintiff's father, of his civil rights under the Fourteenth Amendment to the United States Constitution when they made an intentional decision with respect to the conditions under which Nicholas Sanchez was confined and failed to intervene. The decisions and conditions, include but are not limited to: placing Mr. Sanchez in the 4700 unit that housed gang-affiliated inmates hostile to Mr. Sanchez; placing Mr. Sanchez in the 4700 unit after receiving complaints that Mr. Sanchez's safety was in jeopardy by other inmates in 4700; not monitoring Mr. Sanchez's cell during and after the overdose of his cellmate on January 1, 2019; not moving Mr. Sanchez or calling him out of his cell on January 2, 2019, even after being put on notice his cellmate had ingested contraband and overdosed that same day; failing to install and/or maintain in the cell that Mr. Sanchez had been placed in 4700 adequate audio monitoring equipment capable of alerting personnel who could respond immediately; failing to staff and adequately respond to audio monitoring equipment capable of alerting personnel who could respond immediately in the cell that Mr. Sanchez had been placed in 4700; failing to conduct adequate safety checks. All of these actions and/or omissions were objectively unreasonable.

37.     At all times relevant here, the individual defendants and Doe defendants 1 through 15 did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, which made the consequences of individual and Doe defendants' conduct obvious.

38.     As a proximate result of the conduct of the individual defendants and Doe defendants 1 through 15, in particular, by not taking such measures as described above, Plaintiff and Mr. Sanchez suffered injuries and damages set forth herein, including great physical pain and emotional distress up to the time of Mr. Sanchez's death, loss of enjoyment of life, loss of life, and loss of earning capacity.

39.     The conduct of the individual defendants and Doe defendants 1 through 15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

40.     The individual defendants and Doe defendants 1 through 15 are liable to Plaintiff for the decedent's injuries and death, either because they were integral participants in the wrongful detention of Mr. Sanchez in 4700, or because they failed to intervene to prevent these violations.

41.     Plaintiff J.S., through her Guardian ad Litem Jocelyn Arellano, brings this claim both as a successor-in-interest to decedent, and individually under the Fourteenth Amendment, in that defendants denied this constitutional right without due process of law. Defendants deprived Plaintiff of her right to a familial relationship in such a manner as to shock the conscience. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seek attorney's fees.

## THIRD CLAIM FOR RELIEF

**Municipal Liability –Unconstitutional Custom, Practice, or Policy**

**42 U.S.C. § 1983**

**(Against Entity Defendants)**

42.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

43.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants County, LASD, Villanueva, and certain Does (hereinafter referred to collectively as the entity defendants), with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Nicholas Sanchez and Plaintiffs, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others,

16

1  the following policies, practices and customs:

2          a.     Failing to properly recognize dangerous inmates and hostile

3  situations;

4          b.     Failing to properly monitor, deter control and respond to abuse of

5  inmates by other inmates, and medical emergencies faced by inmates and detainees;

6          c.     Failing to ensure safety of inmates, especially those that might be

7  unable to care for themselves, particularly by failing to conduct adequate inmate safety

8  checks in accordance with LASD policy;

9          d.     Failing to maintain audio monitoring/surveillance of single cells,

10  double-occupancy cells, dormitories, and dayrooms, with audio monitoring capable of

11  alerting personnel who could respond immediately;

12          e.     Failing to establish policies and procedures to reduce the risk of

13  inmate injury by providing for immediate response to inmate medical emergencies.

14          f.     Failing to respond to complaints or grievances filed against LASD

15  deputies;

16          g.     Failure to respond after being put on notice that an inmate or

17  detainee is in immediate physical danger.

18      44.    By reason of the aforementioned policies and practices of Entity

19  Defendants, Plaintiff experienced severe pain and suffering as a result of the loss of

20  Decedent's life, for which she is entitled to recover damages. The aforementioned acts

21  and omissions also caused decedent's pain and suffering, loss of enjoyment of life, and

22  death.

23      45.    Entity Defendants, together with various other officials, whether named

24  or unnamed, had either actual or constrictive knowledge of the different policies,

25  practices, and customs alleged in the paragraphs above. Despite having knowledge as

26  stated above, Defendants condoned, tolerated, and through actions and inactions

27  ratified such policies. Said defendants also acted with deliberate indifference to both the

28  foreseeable effects and consequences of these policies and to the constitutional rights

of Plaintiff, and other individuals similarly situated.

46. Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Entity Defendants were affirmatively linked to and were a significantly influential force behind Plaintiff's injuries.

47. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent and will continue to be so deprived for the remainder of her natural life.

48. Plaintiff J.S., through her Guardian ad Litem Jocelyn Arellano, brings this claim both as a successor-in-interest to decedent, and individually under the Fourteenth Amendment, in that defendants denied this constitutional right without due process of law. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seeks attorney's fees.

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability –Inadequate Training/Policy of Inaction**

**42 U.S.C. § 1983**

**(Against Entity Defendants)**

49. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

50. At all times mentioned herein and prior thereto, Defendants County, LASD, Villanueva, and certain Does had a duty to train, instruct, supervise, and discipline their subordinates to assure they respected and did not violate constitutional and statutory rights of inmates, and to objectively investigate violations of detainees' rights, including, but not limited to the right to be safe and protected from injury in defendants' custody, under the Fourth, Eight and Fourteenth Amendments to the U.S. Constitution.

51. On information and belief, County, LASD, Villanueva and certain Does

facilitated, permitted, ratified and condoned similar acts of inmate abuse by other inmates, and were deliberately indifferent to the health and safety of the inmates in general and Nicholas Sanchez in particular. Said defendants knew, or should have reasonably known, of this practice, pattern or policy of constitutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so. In particular, the entity defendants maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

a. Failing to adequately train, supervise, and control custodians of jail inmates in the proper recognition of dangerous inmates and hostile situations;

b. Failing to adequately train, supervise, and control custodians of jail inmates in properly monitoring, deterring, controlling and responding to medical emergencies faced by inmates and detainees;

c. Failing to adequately train, supervise, and control custodians of jail inmates in the proper response to dangerous situations;

d. Failing to maintain video monitoring/surveillance of inmate areas, such as cell-blocks and cells to ensure safety of inmates, especially those that might be unable to care for themselves;

f. Failing to maintain audio monitoring/surveillance of single cells, double-occupancy cells, dormitories, and dayrooms, with audio monitoring capable of alerting personnel who could respond immediately;

g. Failing to establish policies and procedures to reduce the risk of inmate injury by providing for immediate response to inmate threats of violence and inmate medical emergencies and to conduct adequately safety checks.

h. Failure to respond to complaints that an inmate or detainee is in immediate physical danger.

52. As a result thereof, Nicholas Sanchez sustained the injuries and damages

alleged herein, Mr. Sanchez's rights under the Fourth and Fourteenth Amendment, and Plaintiffs' rights under the Fourteenth Amendment were violated.

53.     By reason of the aforementioned acts and omissions, Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of her natural life. The aforementioned acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life, and death.

54.     Accordingly, Defendants County and certain Does each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

55.     Plaintiff J.S., through her Guardian ad Litem Jocelyn Arellano, brings this claim both as a successor-in-interest to decedent, and individually under the Fourteenth Amendment, in that defendants denied this constitutional right without due process of law, in that defendants denied this constitutional right without due process of law. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seeks attorney's fees.

**FIFTH CLAIM FOR RELIEF**

**Conspiracy to Violate Civil rights**

**42 U.S.C. § 1983**

**(Against All Individual Defendants and Does 1-15)**

56.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

57.     This cause of action arises under United States Code, Title 42, Sections 1983, 1985, and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

58.     Individual Defendants and Does18-15, and each of them:

(a) had a joint and simultaneous duty to make sure that pre-trial detainee Nicholas Sanchez was physically safe while in County custody;

(b) had joint and simultaneous knowledge that Nicholas Sanchez was at risk after his cellmate received emergency medical care and Mr. Sanchez was left alone in his cell;

(c) with such duty, knowledge and a meeting of the minds, took action at the same time and in the same place to collaborate to refuse to protect Nicholas Sanchez. Thus, forming a 'pact of denial' such that for the months that Nicholas Sanchez was subject to bodily danger and not a single one of them did anything to intervene on Mr. Sanchez's behalf or prevent the harm of which Plaintiff warned in her complaints;

(d) acted as described herein above, in conspiracy with, and with the agreement permission, ratification, and approval of, each other to violate Mr. Sanchez and Plaintiffs' civil rights as stated herein.

59.   As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Plaintiffs and Nicholas Sanchez were harmed.

60.   Plaintiff J.S., through her Guardian ad Litem Jocelyn Arellano, brings this claim both as a successor-in-interest to decedent, and individually under the Fourteenth Amendment, in that defendants denied this constitutional right without due process of law, in that defendants denied this constitutional right without due process of law. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seeks attorney's fees.

///

### SIXTH CLAIM FOR RELIEF

### Negligence

### Cal. Civil Code 1714, Cal. Gov. Code § 844.6(d)

### (Against All Individual Defendants and Does 1-15)

61.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

62.     On or about January 2, 2019, Nicholas Sanchez, while in Defendants' custody, was killed in the 4700 unit hours after Mr. Sanchez's cellmate had overdosed in 4700, and after the individual defendants and Does 1-15 failed to conduct adequate safety checks. The individual defendants and Does 1-15 had a duty to act reasonably to avoid, or foresee the risk that Mr. Sanchez was at risk of physical harm and a duty to prevent harm to Mr. Sanchez as a pre-trial detainee.

63.     Individual defendants and Does 8-15 herein, agents, servants, and/or employees of County, and within the course and scope of such agency, service, and/or employment, and under color of authority, were negligent in regards to Nicholas Sanchez's health, safety and welfare, and breached that duty of care by not acting reasonably under the circumstances of such risk, as described herein. In so doing, individual defendants and Dos 1-15 breached their duty of care by not acting reasonably under the circumstances of such risk and/or by failing to discharge their duties. Each of these defendants' breaches of duty were proximate and actual causes of injury to Nicholas Sanchez.

64.     As a result, Nicholas Sanchez was injured and killed. Each of the individual defendants and Does 1-15 were the proximate and actual cause of injury to Plaintiffs, who these defendants are liable to Plaintiffs as a result.

///

**SEVENTH CLAIM FOR RELIEF**

**Bane Act**

**Cal. Civ. Code § 52.1**

**(Against All Individual Defendants and Does 1-15)**

65.  Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

66.  The Cal. Const. Art. 1 § 13 guarantees the right of persons to be free from inmate violence and threats while in custody. Defendants, by engaging in the wrongful conduct alleged herein, denied this right to Nicholas Sanchez, thus giving right to this claim for damages pursuant to Cal. Civ. Code § 52.1

67.  As a direct and proximate result of the aforementioned acts of defendants, Nicholas Sanchez was injured as set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52.1, as well as compensatory and punitive damages according to proof.

68.  In doing the foregoing wrongful acts, the individual and Doe defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Nicholas Sanchez. The wrongful acts, and each of them, were willful, oppressive, and malicious, thus warranting the award of punitive damages against the individual defendants (but not entity defendants) in an amount adequate to punish the wrongdoers and deter future misconduct.

69.  As a result, Nicholas Sanchez was injured and killed. Plaintiff J.S. brings this claim as a successor-in-interest to decedent.

///

**EIGHTH CLAIM FOR RELIEF**

**Failure to Summon Medical Care**

**Cal. Gov't. Code § 845.6**

**(Against All Individual Defendants and Does 1-15)**

70.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

71.     While in defendants' custody, Mr. Sanchez was forced to ingest substances, and as a result, began foaming at the mouth, fell down to the floor, and was rendered unconscious, all in a cell and in a cell-block that should have been equipped with functioning audio and video monitoring capabilities.

72.     The individual defendants and Doe defendants herein agents, servants, and employees of the County, and within the course and scope of that agency, service, and/or employment, and under color of authority, failed to take reasonable action to summons medical care for Mr. Sanchez, despite knowing that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6.

73.     As a result, the decedent's injuries worsened, and without timely medical treatment, he died.

74.     As a result, Mr. Sanchez sustained the injuries and damages alleged herein and  Defendants are liable to Plaintiff as a result.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1.     General and Special damages, including both survival and wrongful death damages, in an amount according to proof;

2.     Exemplary and punitive damages against each individual and Doe defendant, but not against the entity defendants, in amounts according to proof;

4.     Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

5. Such other relief as may be warranted or as is just and proper.

**LAW OFFICES OF JUSTIN STERLING**

DATED: July 1, 2021

By: ___/s/ Justin Sterling___
     Justin Sterling
     Attorney for Plaintiff,
     JOCELYN ARELLANO,
     As Guardian ad Litem for J.S., a minor

**LAW OFFICES OF ERIN DARLING**

DATED: July 1, 2021

By: ___/s/ Erin Darling___
     Erin Darling
     Attorney for Plaintiff,
     JOCELYN ARELLANO,
     As Guardian ad Litem for J.S., a minor

///

1

**JURY DEMAND**

2          Plaintiff Jocelyn Arellano, as Guardian ad Litem for J.S. hereby demands trial by

3   jury on all issues so triable.

4
                                        **LAW OFFICES OF JUSTIN STERLING**
5   DATED:  July 1, 2021

6
                                   By:    _/s/ Justin Sterling_
7                                           Justin Sterling
8                                           Attorney for Plaintiff,
                                          JOCELYN ARELLANO,
9                                         As Guardian ad Litem for J.S., a minor

10

11

12
                                        **LAW OFFICES OF ERIN DARLING**
13   DATED:  July 1, 2021

14

15
                                   By:    _/s/ Erin Darling_
16                                          Erin Darling
17                                          Attorney for Plaintiff,
                                          JOCELYN ARELLANO,
18                                        As Guardian ad Litem for J.S., a minor

19

20

21

22

23

24

25

26

27

28